UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re                                      Chapter 7
Troy A. Blanchard and
Heather J. Blanchard,                      Case No. 14-20258-svk
               Debtors.

---

Larry H. Liebzeit, Trustee,

               Plaintiff,
v.                                         Adv. No. 14-2292

Intercity State Bank, et al.,

               Defendants.

---

## MEMORANDUM DECISION

      The Trustee seeks to avoid a mortgage using the "strongarm" power of 11 U.S.C. § 544(a)(3). Under this provision, the trustee can exercise the rights and powers of a hypothetical bona fide purchaser of the debtor's real property on the filing date. In effect, § 544(a)(3) asks: Suppose the debtor, instead of filing bankruptcy, had transferred the same real property to a bona fide purchaser who knew nothing of a claimant's asserted interest in the property. Between the claimant and the bona fide purchaser, who would prevail under state law? If the answer is the bona fide purchaser, the trustee can avoid the transfer under § 544(a). Susan V. Kelley, *Ginsberg & Martin on Bankruptcy*, § 9.01[B][1] (5th Ed. Supp. 2014-2). Although the trustee's actual knowledge of an unperfected claim or interest is irrelevant, the trustee will not succeed if, under applicable state law, he or she is charged with inquiry or constructive notice of the unperfected claim. *Id.* at § 9.01[C]. The wrinkle here is that the Debtors sold the real property on land contract before granting a mortgage on the property. Even though the land contract

contemplated that the Debtors would obtain a mortgage, the Trustee argues that since the Debtors could not mortgage what they did not own, the mortgage is avoidable and the Trustee is entitled to collect all the payments on the land contract.

FACTS

The facts are not disputed. On August 4, 2010, Troy and Heather Blanchard (the "Debtors") as sellers and Benjamin and Debra Hoffman (the "Hoffmans") as buyers entered into a land contract for real property located at 1028 Weinkauf Road, Edgar, Wisconsin. (Docket No. 1-3.)[1] The land contract contemplates that the Debtors will obtain a mortgage on the property at the best interest rate possible and that the Debtors would "maintain loan." (*Id*. at ¶ 2.) The Hoffmans would make a $30,000 down payment and monthly "rent" payments of $500. (*Id.*) In addition to the land contract, the parties agreed to sign a separate rental agreement. (*Id.* at ¶ 11; Docket No. 7-11.) The balance of the purchase price would be due on September 1, 2015, but if the Hoffmans wanted an "early buyout," the purchase price would be "the balance of the mortgage at that time." (Docket No. 1-3 at ¶¶ 1, 14.) The land contract was not recorded.

On March 14, 2011, the Debtors applied for a mortgage with Intercity State Bank (the "Bank"). (Docket No. 11 at ¶ 6.) The Debtors provided the Bank with a breakdown of their income and expenses, a copy of the Debtors' federal income tax returns, two copies of checks from the Hoffmans -- one containing a notation that the check was for "rent" -- and a copy of the rental agreement. (Docket No. 21 at 15, 16, 21, 23.)[2] They did not provide the Bank with a copy

---

[1] All references are to the CM/ECF docket in the adversary proceeding.

[2] On September 22, 2014, the Bank filed the Affidavit of Michelle Knopf and supporting exhibits (Docket No. 9). The exhibits contained numerous unredacted account numbers and social security numbers, and the Court restricted the affidavit and its exhibits from public viewing. On October 23, 2014, the Bank filed an amended Affidavit (Docket No. 21), redacting all of the account numbers and social security numbers.

2

of the land contract. (Docket No. 11 at ¶ 15.) The rental agreement provides that the Debtors will receive rent of $500 per month. (Docket No. 21 at 4.) It also states that the "Rental agreement accompanies contract to purchase & $30,000.00 deposit. Rental agreement void if land contract not signed." (*Id.*)

On April 5, 2011, Michelle Knopf, Vice President of the Bank, sent an email to another employee regarding the terms of the proposed mortgage loan. (Docket No. 21 at 20.) The very short email states: "$142,000 3 yrs. 5.75% 360 year amort <u>This property is sold on a land contract that will be paid off by 8/31/2015</u>." (*Id.* emphasis supplied.) Ms. Knopf's affidavit states that "[a]t some point, Mr. Blanchard must have mentioned that they sold the Property on a land contract because I included a comment that 'This property is sold on a land contract that will be paid off by 8/31/2015.'" (Docket No. 21 at ¶ 8.) According to Ms. Knopf, based on her 20 years of banking experience, she considered the Debtors to be unsophisticated sellers of real estate, and, thus, "if Mr. Blanchard told me, in passing, that they had a land contract with Hoffmans, I would have dismissed this statement as a confusion of terms since all of the documents clearly supported the conclusion that Blanchards and Hoffmans had a rental agreement." (*Id.* at ¶¶ 18, 19.)

On April 7, 2011, the Debtors signed a business note and mortgage in favor of the Bank. (Docket No. 21 at 29, 31.) The mortgage was recorded on April 21, 2011. To further secure payment of the note, the Debtors executed an Assignment of Leases and Rents, which was also recorded on April 21, 2011. (Docket No. 21 at 34.)

On January 10, 2014, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Larry H. Liebzeit (the "Trustee") is the duly appointed and acting trustee in the Debtors' case. On June 5, 2014, the Trustee filed an adversary proceeding against the Bank

3

and the Hoffmans. (Docket No. 1.) The Trustee cites 11 U.S.C. § 544(a)(3) as the basis for his suit. (*Id*. at ¶ 8.) The Trustee argues that because the Bank had actual knowledge of the land contract, the Bank "may not use the recording statute to defeat the prior claim." (*Id*.) From that premise, the Trustee concludes that the Trustee takes the Debtors' interest in the property free and clear of the mortgage. The Trustee also argues that the Trustee is entitled to all of the payments owed by the Hoffmans to the Debtors on the land contract. (*Id*. at 4.) The Bank answered and denied that the Trustee is entitled to the relief he seeks. (Docket No. 5.)

JURISDICTION AND PROCEDURAL POSTURE

No party has challenged this Court's jurisdiction or authority to enter a final order. The Trustee purports to bring his action under 28 U.S.C. § 2201, giving courts of the United States the power to issue declaratory judgments. However, "courts of the United States" is defined in 28 U.S.C. § 451, and does not include bankruptcy courts. *See In re Volpert*, 110 F.3d 494, 499 (7th Cir. 1997). Nevertheless, courts generally agree that whether under § 2201 or by referral from the district courts, bankruptcy courts can enter final orders in core bankruptcy matters. *See Olsen v. Reuter (In re Reuter)*, 499 B.R. 655 (Bankr. W.D. Mo. 2013) (entering a final order in a turnover action).

The exercise of the trustee's strongarm powers is not specifically described in the list of core proceedings in 28 U.S.C. § 157. However, all of the defendants have filed proofs of claim in this Chapter 7 case, and this action could be construed as a core proceeding to allow those claims under 28 U.S.C. § 157(b)(2)(B). Alternatively, this Court has the ability to enter a final order under 28 U.S.C. § 157(b)(2)(K), providing that that the determination of the validity, priority or extent of a lien is a core proceeding.

On September 19, 2014, the Trustee filed a motion for summary judgment seeking a declaration that the Bank's mortgage is null and void and that the Trustee is entitled to all the land contract payments due to the Debtors. (Docket No. 7.) On September 22, 2014, the Bank filed a motion for summary judgment in its favor. (Docket No. 8.) The parties filed affidavits and briefs. The Court held a hearing on October 7, 2014. At the hearing, the Court denied the Trustee's motion to declare the Bank's mortgage null and void and determined that the Bank's mortgage attached to the Debtors' right to receive the land contract payments.

Given the Court's ruling, the Trustee's attorney indicated that he wished to pursue a settlement, and the hearing concluded. On October 20, 2014, the Trustee filed a Motion for Reconsideration/Clarification. The Trustee has recast some of his arguments to respond to the Court's decision. This memorandum decision will address all of the Trustee's arguments, including those made in the October 20, 2014 motion, and constitutes the Court's findings of fact and conclusions of law.

ANALYSIS

The Trustee cites a number of cases concerning the effect of the Bank's actual or constructive knowledge of the unrecorded land contract. Ironically most of these cases involve a trustee's attempt to avoid an unrecorded land contract. The Court agrees with the premise that the Bank's knowledge of the land contract means that the land contract trumps the Bank's mortgage, but not with the conclusion that the Trustee can therefore declare the Bank's mortgage void.

For example, the Trustee relies on *Osberg v. Fibison (In re Fibison)*, 474 B.R. 864 (Bankr. W.D. Wis. 2011). In *Fibison*, a father and son executed, but did not record, a land contract. After the land contract was fulfilled, the son recorded a quit claim deed to his father.

The son then filed bankruptcy, and the trustee argued that the transfer was avoidable as a fraudulent transfer. The father had lived on the property for years and built a house on it. To defeat the father's interest in the property, the trustee relied on Wis. Stat. § 706.08(1)(a), which provides that "every conveyance that is not recorded as provided by law shall be void as against any subsequent purchaser, in good faith and for a valuable consideration, of the same real estate or any portion of the same real estate whose conveyance is recorded first." The bankruptcy court observed that a purchaser in good faith is one without notice of any existing rights in the land, and that notice can be actual or constructive. *Id*. at 868. Constructive notice includes "notice of all the rights of the possessor and 'of all the facts connected therewith which a reasonable inquiry of the one in possession would disclose.'" *Id*. at 869 (quoting *Bump v. Dahl*, 133 N.W.2d 295, 300 (Wis. 1965)). In *Fibison,* the bankruptcy court concluded that after the debtor's father began living on the property, any subsequent transferees from the debtor would have had constructive notice of the father's claim and would take their interest subject to that claim. *Id*. at 871. "As a result, under § 544(a)(3), the trustee could not have utilized the recording statute to avoid [the father's] interest in the property." *Id*. at 870.

The bankruptcy court cited *In re Fitzpatrick*, 29 B.R. 701, 703 (Bankr. W.D. Wis. 1983), in which the court remarked that the interest of a bankrupt land contract vendor is unchanged whether or not the purchaser records a notice of its interest. In *Fitzpatrick*, the debtor sold property to the Ellsworths under an unrecorded land contract. The Ellsworths were renting the property to tenants when the debtor filed bankruptcy. The trustee argued that a bona fide purchaser under § 544(a)(3) would not be charged with notice of the Ellsworths' interest, because by observing the rental property, the purchaser would find nothing inconsistent between the possession and the record title. "Since this is rental property, a buyer would be fully

6

reasonable in assuming that the tenants are leasing from the debtor." *Id*. at 704. However, the bankruptcy court found that more than mere observation is required of a bona fide purchaser. Citing *Bump v. Dahl*, the bankruptcy court held that the purchaser is under a duty to inquire of the one in possession to determine the ownership of the property. *Id*.

A non-bankruptcy example that is closer to this case is *Waldorff Insurance & Bonding, Inc. v. Eglin National Bank*, 453 So. 2d 1383 (Fla. Dist. Ct. App. 1984), in which Choctaw, a condominium developer, executed a land contract with Waldorff, an insurance company. The contract was not recorded. Choctaw later granted a mortgage on all of the condominium units, including Waldorff's. When the mortgage creditor foreclosed, Waldorff claimed to have priority over the mortgage. The Florida Court of Appeal summarized the applicable law:

> A contract to convey legal title to real property on payment of the purchase price creates an equitable interest in the purchaser. Beneficial ownership passes to the purchaser while the seller retains mere naked legal title. <u>Subsequent successors to the legal title take such title burdened with the equitable interests of which they have either actual or constructive notice.</u> In the instant case, it appears clear that the April 4, 1973, Agreement to Purchase entered into between Choctaw and Waldorff vested equitable title in Waldorff. Therefore, the interests acquired by the Bank pursuant to the October 1973 and June 1974 mortgages would be subordinate to Waldorff's equitable interest if the Bank had either actual or constructive notice of that interest.

*Id*. at 1385 (emphasis supplied) (internal citations omitted).

The court concluded that based on the insurance company's occupancy of the condominium unit, the mortgage creditor had notice of the land contract. Accordingly, the court held that the mortgage was junior to that contract. This was so even though other condominium units were occupied by "tenants" who did not have agreements to purchase. The court cited authorities requiring the mortgage creditor to inquire of each occupant to determine if they had an ownership interest.

Applying these legal principles to this case, it is apparent that the Bank's mortgage is junior to the Hoffmans' land contract interest because the Bank had either actual or constructive notice of the land contract. Even assuming that Ms. Knopf's email and the language in the rental agreement are insufficient to constitute evidence of actual knowledge, the Bank will be charged with constructive notice of what a reasonable inquiry of the Hoffmans would disclose. The email, language in the rental agreement and the Hoffmans' possession and occupancy of the property, combine to suggest that the Bank should not have assumed that they were merely renting. Under these circumstances, the Bank should have asked the Hoffmans about their interest in the property. The Hoffmans would have disclosed the land contract, and the Bank would have had notice of the Hoffmans' ownership interest in the property. Therefore, the Bank's recorded mortgage does not take priority over the unrecorded land contract.

However, the priority of the land contract over the mortgage does not render the Bank's mortgage avoidable by the Trustee. Under § 544(a)(3), the Trustee is a good faith purchaser for value as of the date of the petition. On that date, the Bank's mortgage was recorded against the property. As the Wisconsin Supreme Court noted in *Bump v. Dahl*, a good faith purchaser has three sources of information to consult to learn of rights to the land he is about to purchase, and the first one is the "records in the office of the register of deeds where the basic rights involved are recorded." 133 N.W.2d at 300. The mortgage was duly and validly recorded, and the Trustee must take notice of it. Simply because the Bank's mortgage does not trump the land contract, does not mean that the mortgage is avoidable by the Trustee. The Trustee confuses the Hoffmans' superior interest with the Trustee's rights as a bona fide purchaser, but the Hoffmans have not filed bankruptcy. The Trustee is a bona fide purchaser of the Debtors' interest, and that interest is subject to an unrecorded land contract and a recorded mortgage.

The Trustee has not cited a single case in which a mortgage was invalidated because the mortgage creditor filed its mortgage on property that was subject to an unrecorded land contract. Instead, the Trustee relies mainly on cases evoking the rule that a land contract vendor's interest is personalty, not realty. For example, the Trustee cites *Community National Bank v. O'Neill*, No. 89-2047, 1990 Wisc. App. LEXIS 966 (Wis. Ct. App. Oct. 24, 1990), an unpublished decision about the priority of liens. In *O'Neill*, a mother sold a farm to her son and his wife under a recorded land contract. The sale was subject to the prior mortgage interest of Federal Land Bank of St. Paul. Years later, the son and his wife granted a mortgage to Community National Bank, and the mother co-signed the mortgage. The mortgage did not reference the land contract or state that the mother was assigning her rights in the contract. When Community started foreclosure proceedings, all parties agreed that Federal Land Bank had first priority. The question was whether the mother's land contract or Community's mortgage was second. Based on the language in the mortgage itself (which did not evidence any intent for the mother to pledge her land contract vendor's interest to Community), the court of appeals affirmed the trial court finding that Community's mortgage was junior to the land contract.

The court dispelled Community's argument that since a vendor's interest is considered personalty not realty, a mortgage could never be used to perfect a lien on that interest. The court said that a mortgage <u>could</u> be used to mortgage a personal interest, but in this case, the mortgage did not accomplish that goal. *O'Neill* stands for the proposition that a creditor seeking to obtain priority over a recorded land contract must obtain an assignment of the land contract vendor's interest, rather than simply obtaining the signature of the land contract vendor and vendee on a standard mortgage form.

The Trustee tries to extend this proposition to render the Bank's mortgage invalid, but his argument fails. This case involves a land contract between the Debtors and the Hoffmans that contemplated that the Debtors would obtain a mortgage. The Debtors applied for the mortgage and, while they did not provide the Bank with a copy of the land contract, they provided a copy of the rental agreement that referenced the land contract. And, as evidenced by her email, someone told Ms. Knopf about the land contract. Without the correct documentation, neither the Bank in this case nor Community Bank in *O'Neill* can jump ahead of the land contract. However, it does not follow that the Bank's mortgage is void – even in *O'Neill*, the court of appeals recognized that the question is one of priority, not validity: "The debate is focused on whether Community jumps from last priority to second in place of O'Neill because of her joining in the Community mortgage." 1990 Wisc. App. LEXIS 966, at *2. The court in *O'Neill* did not invalidate Community's mortgage as the Trustee seeks here – it simply moved the mortgage to the back of the line, behind the land contract.

Taking the Trustee's "vendor's interest as personalty" argument to its logical conclusion would require an assignment of a land contract vendor's interest to be recorded in the UCC records, not in the real estate records. That argument was rejected almost 30 years ago in *In re Hoeppner*, 49 B.R. 124 (Bankr. E.D. Wis. 1985). Judge Shapiro noted that "[t]oo much emphasis has been placed upon the fact that a land contract vendor's interest is personal property." *Id*. at 127. Notwithstanding the doctrine of equitable conversion, in which the vendor's interest in a land contract is generally considered to be personalty, the court in *Hoeppner* held that an assignment of a vendor's interest in a land contract is properly recorded in the land records.

10

*Kloian v. Van Fossen*, No. 287812, 2010 Mich. App. LEXIS 116 (Mich. Ct. App. Jan. 21, 2010) is an unpublished decision of the Michigan Court of Appeals in which the court thoroughly examined the common law doctrine of equitable conversion. In that case, after a protracted dispute, a court ordered Kloian to sell certain property on land contract to Van Fossen. Kloian then granted a mortgage on the property to Weber. The trial court found that "because Kloian's land contract vendor's interest was an interest in personalty, Weber took only a security interest in Kloian's personalty rather than a true mortgage interest in the real property." *Id*. at *48. On appeal, this proposition did not prevail. The court of appeals first recognized that under the doctrine of equitable conversion, the land contract vendor's interest is generally considered to be personalty from the time the land contract is signed. *Id*. at *50. However, the court also stated that the doctrine is not an absolute rule. For example, it would not be applied to work a fraud or defeat the true intentions of the parties. *Id.* at *51. Turning to the question of whether a land contract vendor's interest was mortgageable at common law, the court concluded it was:

> Thus, notwithstanding the doctrine of equitable conversion, the vendor's interest in a land contract was clearly mortgageable at common law. *Union Guardian Trust Co v Rood (On Rehearing)*, 265 Mich 354, 354-355; 251 NW 309 (1933); see also *Kramer*, 247 Mich at 472 (noting that if the vendors of real property had granted a mortgage after execution of the contract, "it would hardly be contended that it was a chattel mortgage, because it covered only the interest of the vendors which had become personal property under the doctrine of equitable conversion"). Moreover, the general common-law rule was that the land contract vendor's mortgagee held his security interest in realty rather than in personalty, and that his mortgage was therefore "foreclose[able] as a real estate mortgage rather than as a chattel mortgage." *Rood*, 265 Mich at 355; see also Nelson & Whitman, Real Estate Finance Law (4th ed), § 3.37, pp 115-116.

*Id.* at *51-52.

Finally, the court clarified that the majority rule at common law is that a mortgage given by a land contract vendor "encumbered the land *only* to the extent of the vendee's remaining indebtedness for the unpaid portion of the purchase price." *Id*. at *53. *See also Marion*

*Mortgage Co. v. Grennan*, 143 So. 761, 766 (Fla. 1932) ("It seems, however, that while a contract for the sale of land remains executory, and no deed has passed, that whatever rights remaining in the vendor may be the subject of a mortgage by him, though the terms of the mortgage given by the vendor cannot restrict the rights of the purchaser under the executory contract of sale."). The court in *Kloian* concluded: "In light of this authority, it necessarily follows that once the vendee has paid off the entire purchase price remaining due under the land contract, the vendee is entitled to receive a deed from the vendor free of the mortgage, and the mortgage held by the vendor's mortgagee is extinguished." 2010 Mich. App. LEXIS 116, at *53-54. *See also Hostmann v. Wilbur-Ellis Co. (In re John W. Stoller, Inc.),* No. 95-35548, 1996 U.S. App. LEXIS 21988 (9th Cir. Aug. 23, 1996) (reversing district court and reinstating bankruptcy court ruling that deed of trust on land contract vendor's land covered land contract payments even though land contract was not specifically assigned in the deed of trust).

It follows that although the Bank's mortgage is junior to the Hoffmans' interest in the real property, the mortgage nevertheless remains a valid lien on the Debtors' interest in the property. As such, the Bank's mortgage secures the Debtors' right to receive the land contract payments from the Hoffmans, and if the Hoffmans pay off the land contract in full, the Bank's mortgage will be extinguished. This conclusion also appears to coincide with the parties' intention: in the land contract, the Debtors and the Hoffmans agreed that the Debtors would obtain a mortgage at a favorable interest rate, and the Hoffmans would pay the balance due on the mortgage as the buyout price of the property.

In his motion for reconsideration, the Trustee again cites *O'Neill*, for the proposition that by deciding that the Bank's mortgage interest is limited to the Debtors' land contract receivable, the Court is impermissibly "reforming" the mortgage. First, the court in *O'Neill* did not decide

12

that a mortgage could never be reformed to cover a vendor's rights to land contract payments. Rather, the court of appeals held that in that particular factual scenario, Community had not demonstrated its rights to reformation of the mortgage. Also, it is application of the common law, not the equitable principle of reformation, that renders the Debtors' interest subject to the mortgage. *See Kloian, supra*. Moreover, this argument again ignores the Trustee's status as a bona fide purchaser of the Debtors' interest in the property. Under § 544(a)(3), on the petition date, the Trustee was charged with notice of the Bank's recorded mortgage and the occupancy of the property by the Hoffmans. By recognizing the interests that a bona fide purchaser of the property would take subject to, this Court is not reforming the mortgage.

## CONCLUSION

The Trustee argues that the mortgage is avoidable because the Debtors cannot mortgage what they do not own. But, as land contract vendors, the Debtors do have rights in the real property – the rights to enforce the land contract, collect the payments from the Hoffmans and foreclose if the Hoffmans default. Case law recognizes that land contract vendors can mortgage their vendors' interests; if a bankruptcy ensues, the land contract vendor's bankruptcy trustee will take the property subject to any competing claims and interests that would be binding on a bona fide purchaser under state law. One such case reached the Eleventh Circuit Court of Appeals. In *Zuppardo v. BC Properties Ltd. (In re J.H. Investment Services)*, 413 F. App'x 142 (11th Cir. 2011), JHIS sold property to Zuppardo on a land contract. Before Zuppardo could record his deed, JHIS sold the property to BC Properties, and BC Properties recorded its deed to the property. JHIS then filed a Chapter 11 case, and the Chapter 11 trustee attempted to avoid Zuppardo's interest in the property. The court of appeals rejected the trustee's arguments stating: "[A]s it is clear that either Zuppardo or BC Properties would qualify as bonafide

13

purchasers under the Bankruptcy Code and the Trustee lacked authority to undo either sale transaction regarding Unit 19, the dispute about who owned Unit 19 was between Zuppardo and BC Properties only. . . .  However, because Unit 19 had been sold twice to bonafide purchasers prior to the institution of the Chapter 11 proceedings, Unit 19 was not a part of the bankruptcy estate." *Id.* at 148.  In this case, the Debtors also transferred their interest in the property to two bona fide purchasers for value:  first to the Hoffmans and then to the Bank.  Although the transaction with the Bank was a mortgage not a sale, the result for the Trustee is the same.  Neither the Hoffmans' ownership interest nor the Bank's mortgage is avoidable by the Trustee under § 544 of the Bankruptcy Code.

     The Trustee's motion for summary judgment seeking to avoid the Bank's mortgage is denied.  The Bank's motion for summary judgment seeking dismissal of the Trustee's complaint against the Bank is granted.  The Court will enter an Order dismissing the complaint as to the Bank and dismissing the complaint as to the Hoffmans, to the extent the Trustee seeks to collect from the Hoffmans free and clear of the Bank's mortgage.

Dated:  October 27, 2014

By the Court:

*Susan Kelley*
Susan V. Kelley
U.S. Bankruptcy Judge